IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA J. CARNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-126 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 31st day of March, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and his claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] For the most part, Plaintiff is simply asking the Court to reweigh the evidence and find that the Administrative Law Judge ("ALJ") erred in failing to properly consider the medical

1

evidence in formulating his residual functional capacity ("RFC") and in determining whether he met a listing at Step Three of the sequential analysis. However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). The Court finds here that substantial evidence does support the ALJ's decision and, therefore, it will affirm.

Plaintiff first argues that the ALJ improperly assessed the medical opinion evidence, giving more weight to the opinions of the state agency reviewers and consultants than to the opinions of his treating physicians, both in determining his RFC and in finding that he did not meet a listing. He raises several arguments, but probably the primary one is that the state agency opinions failed to take into account medical developments after those opinions were issued and therefore were less persuasive than the later opinions of Plaintiff's treating physicians which were supported by the complete record. The Court disagrees.

The ALJ considered seven medical opinions in this case. He found the opinions (*i.e.*, prior administrative findings) of the state reviewing agents to be generally persuasive. (R. 17). These included a February 4, 2020 opinion from Nghia Van Tran, M.D. (63-66, 74-77), and a November 23, 2020 opinion from Diane Fox, M.D. (91-97, 110-16), both which supported the RFC ultimately formulated, including a restriction to a limited range of sedentary work. The ALJ found the opinions of the consultative examiners to be somewhat persuasive. (R. 17-18). These opinions contained significantly less restrictive functional limitations: Debra Davis, N.P., in her January 23, 2020 report opined that Plaintiff could perform a limited range of medium work and that he could walk and/or stand for 4 hours out of an 8-hour workday (R. 651-67), and Alexandra Smith-Demain, M.D., in her October 23, 2020 report stated that Plaintiff could walk/stand for 7 hours and found that he could perform a limited range of light exertional work. (R. 807-21). The RFC is generally consistent with, and indeed for the most part more restrictive than, these opinions.

On the other hand, the ALJ found the opinions of Plaintiff's treating physicians to be not persuasive. (R. 18). These included Matthew Fisher, M.D.'s June 26, 2019 indication on a state Employability Assessment Form that Plaintiff was permanently disabled (R. 569-70), as well as the check-box opinions of Plaintiff's cardiologists Gavin Hickey, M.D., dated February 25, 2021 (R. 929-32), and Jeffrey Cohen, M.D., dated March 15, 2021 (R. 939-42), both of which opined that Plaintiff could perform sedentary exertional work, but with numerous additional restrictions, including that he would be absent and/or off-task an unacceptable amount of the time. While the ALJ did not wholly reject these opinions, they were clearly not generally incorporated into the RFC.

The crux of Plaintiff's contention is that the opinions of the state agency reviewers/consultants were issued prior to those of Drs. Hickey and Cohen, so they clearly did not have access to a portion of the record evidence at the time of their reports. However, the fact that the state reviewing agents' and consultative examiner's opinions were rendered before other

2

evidence became available does not mean the ALJ was prohibited from finding them to be persuasive. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). It is noteworthy that the latest of the state agency opinions only predates the treating physicians' opinions by a few months, and Plaintiff does not identify with any specificity what evidence from that time lapse would have led to any different conclusions. Moreover, while there was later evidence to which the state reviewing agents and consultative examiners had no access, the ALJ was aware of and expressly considered and discussed this evidence in evaluating the opinions and formulating the RFC. (R. 17). Further, there is no indication how much of the record was available to Drs. Hickey and Cohen when they provided their opinions, and, indeed, even these later opinions were offered well before the record was complete.

Plaintiff further argues that the opinions of Drs. Hickey, Cohen, and Fisher should have been found more persuasive than the other opinions because they were from long-time treating health care professionals and were consistent with and supported by the record. The Court first notes that, as Plaintiff acknowledges, for cases such as this one, filed on or after March 27, 2017, the regulations have eliminated the "treating physician rule." *Compare* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R. §§ 404.1520c(a) and 416.920c(a) (applying to later cases). *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017). While the medical source's treating relationship with the claimant is still a valid and important consideration, "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability." 82 Fed. Reg. at 5853. *See also* §§ 404.1520c(b) and (c); 416.920c(b) and (c). Here, the ALJ discussed the opinions of Drs. Hickey, Cohen, and Fisher and explained that he found them to be inconsistent with the record medical evidence and Plaintiff's reported activities of daily living. (R. 18).

Part of the issue is that the ALJ relied on what he characterized as Plaintiff's improvement after a December 2018 incident during which he was hospitalized for acute respiratory distress. Plaintiff disagrees with this characterization and argues that this misunderstanding of the record corrupted the ALJ's analysis. However, the ALJ supported his finding that Plaintiff had shown improvement with specific references to the record, including records showing a complete clearing of the lungs and resolution of bilateral pleural effusions in February 2019 (R. 394), records from February to April 2019 showing that Plaintiff presented with no signs of heart failure symptoms (R. 520-40), treating notes from October 2019 showing Plaintiff was doing well with no complaints and increased tolerance for physical activity (R. 904-05), and the fact that he received a New York Heart Association Functional Class II rating, indicating only slight limitation of physical activity. (R. 767). The ALJ further cited 2021 treatment notes showing continued improvement. (R. 17, 910-28, 933-38). Plaintiff may disagree with the ALJ's characterization, but there is no question that it is supported by substantial evidence, especially in light of the United States Supreme Court's reminder that the threshold for meeting the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154.

Plaintiff states that the RFC in this matter "failed to take into account all of the limitations caused by Plaintiff's impairments, and did not present an accurate picture of his condition including all of his impairments to the Vocational Expert." (Doc. No. 15, p. 22). However, as discussed, the ALJ based his findings on objective medical evidence, Plaintiff's treatment history, his activities of daily living, and a number of generally supportive medical opinions. While Plaintiff may disagree as to how persuasive the ALJ found the opinions of the non-treating physicians, as discussed above, the ALJ had adequate reasons for evaluating the opinions as he did. The Court further notes that, even under the regulations governing cases filed prior to March 27, 2017, while an ALJ was required to consider the treating relationship between a claimant and an opining doctor, when the medical opinion of a treating source conflicted with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See also Dula v. Barnhart*, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005); *Salerno v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 208 (3d Cir. 2005). Indeed, the RFC formulated by the ALJ here was actually more restrictive than either of the consultative examiners' opinions. Balancing the evidence, including the varying opinions, is precisely what an ALJ is supposed to do. *See Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of an ALJ's duties."); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813 (3d Cir. 2003).

As for Dr. Fisher's June 2019 opinion, the Court notes that, unlike the other treating physicians' opinions, it does not postdate the opinions of the state reviewing agents and consultants. It is, in fact, by far the oldest opinion in the record. Regardless, this opinion is merely an indication on a state Employability Assessment Form that Plaintiff was permanently disabled, and it is well established that such statements are not binding on the ALJ, as opinions as to whether a claimant is disabled or unable to work is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

Plaintiff further argues that the ALJ erred in finding that his condition did not meet or equal Listing 4.02, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. This listing provides:

> **4.02** *Chronic heart failure* while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in *both A and B* are satisfied.
>
> **A.** Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5

4

cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

AND

**B.** Resulting in one of the following:

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

Plaintiff contends that his condition satisfies the criteria of 4.02A.1, as the record contains medical documentation of systolic heart failure with left ventricular and diastolic dimensions greater than 6.0 cm and/or ejection fraction of 30 percent or less during a period of stability. He also argues that his systolic failure satisfies 4.02B.1 and/or 3 because it resulted in either persistent symptoms of heart failure which very seriously limit the ability to independently

5

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED as set forth herein.

s/Alan N. Bloch
United States District Judge

ecf:       Counsel of record

---

initiate, sustain, or complete activities of daily living, an appropriate medical consultant having concluded that the performance of an exercise test would present a significant risk to Plaintiff, or an inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to signs and symptoms attributable to his heart disease. (Doc. No. 15, pp. 20-21). He asserts that this is demonstrated by the opinions of Drs. Hickey and Cohen.

However, as the Commissioner points out, the ALJ did not find the opinions of Drs. Hickey and Cohen to be persuasive, and, as discussed above, his findings were supported by substantial evidence. The ALJ did note that the state reviewing agent opinions that he found to be generally persuasive likewise did not indicate that Plaintiff met or medically equaled Listing 4.02. (R. 15). Moreover, even if Drs. Hickey and Cohen's check-box statements were given greater weight, they disagreed as to whether Plaintiff's condition would satisfy 4.02B.1, and both provided incomplete analysis in regard to 4.02B.3, as neither identified the reasons Plaintiff would not be able to perform on an exercise tolerance test at a workload equivalent to 5 METs or less. (R. 930, 940). It is important to remember that to meet a listing, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment." *Degenaro-Huber v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 73, 75 (3d Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original)).

Ultimately, Plaintiff is simply again asking the Court to reconsider and reweigh the evidence on its own. As explained, the Court cannot do this. *See Hartranft*, 181 F.3d at 360; 42 U.S.C. § 405(g); *Monsour Med. Ctr.*, 806 F.2d at 1190-91; *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). Moreover, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). Here, substantial evidence supports the ALJ's determination that Plaintiff did not meet or equal Listing 4.02.

In making his decision, therefore, the ALJ relied on the objective medical evidence, Plaintiff's testimony, treatment history, daily activities, and the medical opinion evidence. As discussed, his findings were supported by at least four different medical opinions. All of this constitutes substantial evidence in support of the ALJ's findings. Accordingly, for the reasons set forth herein, the Court affirms.